SANTIAGO ESPADA, Plaintiff and Appellee, *v.* CARLOS MATEO ROCHE, Defendant and Appellant.

No. R-64-253.    Decided March 29, 1968.

Francisco Vázquez Gutiérrez for appellant. *José M. Dávila Monsanto* and *Santiago C. Soler Favale* for appellee.

MR. JUSTICE RAMÍREZ BAGES delivered the opinion of the Court.

Appellant has moved for the reconsideration of our judgment rendered in this case affirming the judgment of the Superior Court, Guayama Part, which orders appellant to vacate, within 90 days, a frame house located on a lot belonging to the municipality of Salinas, which property is described in the complaint. In our judgment we held that:

"We have examined the evidence presented by both parties, and although there is the characteristic conflict of evidence between the assertion of the former owner, now tenant at sufferance, that the operation was a secured loan, and the assertion of the present owner that it is a sale, the evidence of the present owner is more convincing, in addition to being buttressed by the deed of sale."

■ The fact that plaintiff's title originates from defendant's title or has a common origin with that of the latter does not preclude defendant from adducing evidence showing a conflict of title to the point that such conflict cannot be decided in an unlawful detainer proceeding. *Roger* v. *Torres*, 71 P.R.R. 798, 801–802 (1950); *Nieves* v. *Ayala*, 66 P.R.R. 742, 744 (1947); *Fontánez* v. *Sierra*, 55 P.R.R. 928, 932–33 (1940); *Colón* v. *Colón*, 51 P.R.R. 95, 100 (1937).

■ In *Nieves* v. *Ayala, supra*, we said that "An apparently *bona fide* claim supported by evidence sufficient *to show some color of right*—evidence sufficient to present a genuine question of title—will justify and require a dismissal of the proceeding."

The documentary evidence in the case at bar consisted in (1) a certified copy of deed No. 11 executed on March 14, 1960, before notary public José A. Valero Zayas, by virtue of which appellant sold to appellee two frame houses, one located on a lot belonging to the municipality of Coamo and the other on a lot belonging to the municipality of Salinas, the latter being the object of the unlawful detainer proceeding in this case, and a lot and house in ward Pasto in Coamo, for the amount of $1,200 the first, $1,000 the second and $1,100 the third property, which amounts defendant received in the presence of the executing notary; (2) a certified copy of deed No. 11, executed on March 25, 1963, before notary public José M. Ayala Cádiz, by virtue of which appellee sold the aforementioned third property to appellant's

father for the amount of $1,400 which the former received in cash at the act of execution.

Appellee testified that he is the owner of the property object of the unlawful detainer proceeding which he bought from appellant who lived in it and still lives in it, without paying any rental whatsoever, although he had granted him six months to vacate it, which term expired 22 months ago; he denied having lent $3,300 to appellant, and also that the sale of said property and the other two was only executed to secure the payment of said debt; that he sold the house in Guayama to a lady whose name he does not remember for an amount which he does not remember either; that he does not remember whether the proceeds of said sale were received by appellant except as to the appellee's participation of $1,200. As to the farm in ward Pasto in Coamo he testified that he does not remember to whom it belongs; that he sold it to a certain Gerardo for an amount which he does not remember; he accepted it was Gerardo Mateo, appellant's father; that Gerardo was living in said property when he sold it to him.

Appellant testified that he needed $3,000. He talked to appellee and the latter told him that as he had "to pay interest right there" he had to borrow $3,300, which he borrowed securing them with said three properties; that he received $3,003, since appellee charged $297 interest; that when the first six months expired:

"Then the property which was mortgaged for 1,200 dollars was sold for 2,500 dollars; he took 1,200 dollars and delivered the remainder to me. Thereafter I continued to pay for the 2,100 dollars which I still owed, at the rate of 180 every six months, when I could pay it, plus interest. He filed the complaint in the Ponce Part, then I sold the house to my father. I owed him one thousand one hundred dollars for that house plus 300 dollars interest, the deed is executed for 1,400 dollars and there remains that house only for one thousand dollars. Those are the facts involved in this case, Sir. The first two houses

were sold, one was sold to my father, or he provided the money because I did not have it; then, in order that he could keep the house for 1,400 dollars, 300 dollars interest owed to him plus the first which was sold to him for 2,500 dollars; he took 1,200 and delivered the remainder to me. Then there remains the house in Playa de Salinas, which was the last one, for one thousand dollars; that was the one executed before an attorney, the three properties are included for one."

When the trial judge asked why a mortgage note had not been executed to secure the loan, appellant answered:

"I had never done that, do you understand? and he told me: 'It has to be done that way' and I : . .

".       .      .      .      .      .      .    .   .

"The man told me that it had to be done that way and I never realized it was a sale, because the three properties are worth much more money."

Appellant continued testifying that he was the one who sold the other two properties; that the one he sold to his father "was precisely . . . as a result of the unlawful detainer proceeding that he [that is, appellee to appellant] had filed against him"; that then his father told him "I am going to rescue it, and $300 interest plus $1,100 more were paid for the house"; that:

: "As I have not been able to pay the interest for the property in Salinas, which is mortgaged for one thousand dollars, not long ago he offered to give me 220 dollars more and I told him that I could not accept because that house cost me much more than that.

".       .    .   .      .      .      .     .   .

"That house is mine.

".       .      .  .      .      .      .    .    ;

: "That is why I live in it, because it is mine and the three were mortgaged under the same condition. I have not been able 'lately to pay the interest.' "

■ This evidence, as to weight and sufficiency in relation to the conflict of title which arises therefrom is similar to that presented in *Heirs of Pedroza* v. *Martínez*, 64 P.R.R. 5, 7–10 (1944), where we reversed the judgment of the trial court because we concluded that the evidence as to defendant's title, although oral and rebutted, was sufficient "to show some color of right, evidence sufficient to present a genuine question of title, . . . at least some evidence of the same . . . sufficient facts to show that his pretense of title has some basis . . ." which entails the dismissal of the unlawful detainer proceeding.

In this case plaintiff was not a third party who bought from another, who, in turn, bought from defendant, as it occurred in *Faría* v. *Negrón*, 55 P.R.R. 17 (1939). Furthermore, there appear in the record circumstances showing that appellant's allegation of title was "buttressed by proof that the claim to title is bona fide and by proof which raises a conflict of titles," as we said in *Meléndez* v. *Pacheco*, 75 P.R.R. 89, 93 (1953), and in *Crespo* v. *Irizarry*, 71 P.R.R. 902, 907 (1950). Among such circumstances the following appear:

1. When a property is not recorded it cannot be mortgaged. Furthermore, since the property was appellant's home, it enjoyed the protection offered by the homestead law (31 L.P.R.A. §§ 1851 to 1857). Under such circumstances the moneylenders usually require a simulated sale to secure the loans.

2. Appellant bought the house in Salinas where he constituted his home on March 7, 1960, and the sale deed of the latter and the other two properties was executed in favor of the appellee seven days later, that is, on March 14, 1960. It does not seem credible that a house which constitutes the home of the owner is sold a few days after it is bought.

3. Although appellee presented the deed of purchase of the three properties and testified that he permitted appellant to

continue living in the house in Salinas for six months, but that the latter continued living therein without paying any rental whatsoever, yet said appellee did not remember to whom and for how much he had sold the house situated on the lot belonging to the municipality of Coamo. He did not remember whether the proceeds of the sale were received by appellant except for appellee's participation, which was $1,200 which the latter had loaned to appellant. He did not remember either who lived in the house in ward Pasto in Coamo, or who was the owner after he sold it to a certain "Gerardo," or the amount for which he sold it.

4. The payment of interest in advance is a general practice in the kind of transaction alleged by appellant.

5. One of the properties in Coamo was sold for more than twice the price appearing in the deed by virtue of which appellant sold said property to appellee, and the remainder was received by appellant. The other property in Coamo was sold to appellant's father for a sum equal to the price which appellee appears to have paid for it plus interest paid in advance.

In his opposition to the reconsideration requested appellee merely informed that the judgment "was rendered according to the rules of justice and law." The same does not rebut or in any other manner challenge the grounds for this opinion.

In view of the foregoing, the judgment rendered on September 21, 1967, will be set aside; the judgment of the Superior Court, Guayama Part, of June 17, 1964, in Civil case CS-62-725 will be reversed, and the complaint of unlawful detainer filed in said cause will be dismissed.

Mr. Chief Justice Negrón Fernández and Mr. Justice Santana Becerra did not participate herein.